28  199
37  600

HAMILTON, Respondent, v. WRIGHT'S ADMINISTRATOR, Respondent.

1. The word " lease" as an operative word in an instrument of lease imports and contains a covenant for quiet enjoyment as well as the words " grant and demise." (SCOTT, Judge, dissenting.)
2. Such implied covenant runs with the land.
3. A., a tenant for life only of certain real estate but possessed of a full power to dispose thereof by appointment by will, leased the same to B. for a term of ten years. A. died before the expiration of said term without having

attempted to protect the tenant by exercising the power of appointment, and the tenant was evicted by the remainder man. *Held,* that B. might maintain an action against A.'s administrator to recover damages for a breach of the covenant implied from the word "lease" in the instrument of lease.

### Appeal from St. Louis Land Court.

Demurrer to a petition. The petition is as follows: "The plaintiff states that one William F. Wright in his lifetime, by an indenture made between him of the one part, and Peter Difley of the other part, dated the 27th day of April, 1852, the said William F. Wright did lease unto the said Peter Difley a certain lot of ground and premises therein more particularly mentioned and described, situate in the city and county of St. Louis, in the state of Missouri, for the term and at the rents and upon the covenants and stipulations therein particularly set forth, which said indenture, sealed with the seal of the said William F. Wright, the plaintiff now brings into court here, and which is in the words and figures following: 'Lease, made this 27th day of April, 1852, by and between William F. Wright, lessor, and Peter Difley, lessee. Said Wright hereby leases unto said Difley, upon the conditions, covenants and for the rents heretofore named, a lot of ground [describing it] and being the same premises heretofore leased to said Difley: To have and to hold for a term of ten years from and after the 1st of January, 1853, at an annual rent of six hundred dollars, payable monthly, &c. And said Difley hereby covenants as follows: 1st, that said rent shall be punctually paid as due; 2d, that said Difley shall, within a reasonable time after the date hereof, add one story more upon the two houses upon said lot, with suitable back buildings, and make said improvement in a permanent and suitable manner, and keep and maintain all the improvements on said lot in good order and repair, and so deliver them to the lessor or his legal representatives at the end of said term by limitation or forfeiture; 3d, that the improvements shall be insured and kept insured, &c. This lease is made upon condition that if said rent or

any instalment thereof shall be allowed to remain due for thirty days after the same is payable, or if any of the covenants aforesaid shall not be complied with within a reasonable time, then this lease shall be forfeited and void. It is understood that all the repairs, additions and improvements on said lot and on the buildings thereon are to be at the sole cost of said lessee, and said lessor shall not be in any way chargeable for said premises. This lease is given in lieu of and is accepted for the renewed lease for five years from the 1st of January, 1853, stipulated for in the indenture of lease dated 22d of November, 1847, and under which said Difley holds said premises up to the beginning of the term aforesaid. The lessor is to pay the state, city and county taxes. It is also understood that this lease is assignable at the option of said Difley or legal representatives. It is understood that the lessor shall have the right to designate the insurance company in which said premises shall be insured, and may from time to time, as said lessor may elect, change the risk from one office to another, &c. In witness whereof,' &c. And the plaintiff further states that the said Peter Difley on the 18th of October, 1852, by deed of that date, together with his wife, for the consideration of $1,300 cash in hand paid them by the plaintiff, did assign, transfer and set over unto the plaintiff the said indenture of lease, together with all their right, title and interest, claim, property and demand of, in and to the said premises so as aforesaid leased, which they then had either by means of said lease or otherwise howsoever, by virtue of which said assignment the plaintiff on the same day last aforesaid entered upon the said premises and became possessed thereof, and was entitled to have and keep possession of the same upon the 1st of January, 1863; that he and those under whom he claims have punctually paid the rents reserved in the said lease and performed all the covenants on their part to be kept and performed, and that he had been, from the time of said assignment to him up to the time of taking of the possession of the premises by the curator of William F. Wright, as hereinafter mentioned,

in the receipt of large sums of money over and above the rents thereon and the cost and expenses of insurance. And the plaintiff further states that the said William F. Wright departed this life some time in or about the 9th of May, 1856, intestate, leaving as his only son and heir William T. Wright, who is under the age of twenty-one years, and for whom the said James T. Sweringen has been duly appointed curator, the said Sweringen, defendant, having also been duly appointed by the St. Louis probate court administrator of the estate of the said William F. Wright, deceased. And the plaintiff further states that before and at the time of making the said indenture and from thence until at the time of the death of the said William F. Wright, he, the said Wright, had not a good right or title, or full or lawful power or authority to lease the said premises for the said term of ten years in the manner above set forth, or for any period beyond the term of his life, (notwithstanding he had full power and authority under the deed from Mary Ann Wright, hereinafter mentioned, by his last will and testament, to direct the trustees in the said deed named to hold or convey the said property subject to the said lease, or otherwise dispose of the same in such manner as to render valid and effectual as against all persons whomsoever the said term or the residue thereof,) the only title or right or power which the said William F. Wright at any time ever had in, to or over the said property being derived under a certain deed from Mrs. Mary Ann Wright to M. Lewis Clark, Samuel B. Churchill, and David D. Mitchell, dated November 19, 1844, by which said deed the premises were held by the said parties in trust to and for the said William F. Wright during his natural life, and after his decease to be conveyed and disposed of by the said trustee as he, the said William F. Wright, should by last will and testament appoint, (but by no other appointment,) and in default of such appointment to and for the lawful heirs of his body, as by said deed, reference being thereunto had, may more fully and at large be seen. And the plaintiff further saith that the said William F. Wright

having so as aforesaid died intestate and without having made such an appointment, the said term ended and was determined upon his decease; and thereupon, under and by virsue of the said deed from the said Mary Ann Wright, the said William T. Wright, as heir of the said William F., became and was entitled to the fee simple of the premises so as aforesaid leased and to the immediate possession thereof; and the said William T. Wright having such lawful right and title to enter into and upon the said premies and take, possess and enjoy the same and evict the plaintiff therefrom, whilst he, the plaintiff, was in the possession of the premises, that is to say, on or about the 26th day of June, 1856, by James T. Sweringen, as curator of and acting therein in behalf of said William T. Wright, lawfully entered into and upon the said premises and thereof evicted the plaintiff (under and by virtue of the right and title so as aforesaid acquired by the said William T. under the said deed from the said Mary Ann Wright) and still lawfully holds the plaintiff out of the same. By reason of which said several premises the plaintiff not only lost and was deprived of the use, benefit and enjoyment of the said premises for the residue of the said term, but also lost the value of the improvements or additions put upon the said premises by the said Peter Difley in conformity with his said covenant in that behalf (which value the plaintiff believes to be about $1,000). To the damage of the plaintiff three thousand dollars, for which he asks judgment."

The defendant demurred to this petition. The court sustained the demurrer.

*Shepley*, for appellant.

I. The law implies a covenant as well for title as for quiet enjoyment from any words of leasing. (Rawle on Cov. 473–4 and notes; 1 Furlong on Landlord and Tenant, 456; 4 Jarman, Conveyancing, 390; Addison on Contracts, 50, 61; 5 B. & C. 589; Coote, Land. & Ten. 215; Maeder v. City of Carondelet, 26 Mo. 112; Maul v. Ashmead, 20 Penn.

482; Black v. Gilmore, 9 Leigh, 448; Dexter v. Mauley, 4 Cush. 14.) The only case opposed to this view is Levering v. Levering, 13 N. H. 517. See Rawle on Cov. 473, notes.)

II. The covenant, in both its branches, runs with the land. (Rawle on Cov. 343, 380; Dickson v. Desiré's Adm'r, 23 Mo. 151; Chambers' Adm'r v. Smith's Adm'r, 23 Mo. 174.)

III. The defendant as administrator of William F. Wright is liable upon the implied covenant. The doctrine supposed to have been established in Swan v. Scarles, Dyer, 257, and Adams v. Gibney, 6 Bing. 656, is repugnant alike to common sense and common justice, violates the plainest rules for the construction of instruments, and is utterly at variance with an intelligent theory which furnishes any covenant at all. This case is however entirely without the rule of those above mentioned, as well because the lessor had it in his power to maintain the tenant in his estate, (and it is only to suppose him an honest man to infer that he intended to do so,) as the clear intention of the parties deducible from the subject matter and terms of the lease, and the court will not extend the doctrine to cases not within the reasons upon which it is based. (See generally Swan v. Scarles, Dyer, 257; 6 Bing. 656; Shep. Touch. 160; Cro. Eliz. 157, 553; 1 Brownl. & Gol. 22; Com. Dig. Covenant C.; 2 Williams on Ex'rs, 1490; Vimer, Abr. Covenant D. & E.; Rolle, Rep. 82; Hobart, 12; 9 Jarm. on Conv. 371; 7 Scott, 60; 1 Nev. & Per. 663; 2 Chitty, 646; Styl. 407; Gilb. Cov. 327; 6 Scott, 447; Co. Litt. 389, a; 1 C. B. 427; 4 Jarman on Conv. 391; Owen, 105; 3 C. B. 194; 9 Leigh, 446; Williams on Real Property, 112; Woodfall on Land. & Ten. 91; 6 Upper Can. R. 303; 3 Kern. 156; Smith on Land. & Ten. 262.)

*F. A. Dick*, for respondent.

I. The petition is defective. The lease is a mere transfer of the lessor's right to the possession of the premises for ten years in consideration of the lessee's covenants. It contains no express covenants. The law will not imply a covenant by

the lessor that he had power to lease for ten years, when the estate held by him is repugnant to such intention. (6 Bing. 656.) The words "grant" and "demise," when used in a lease, are the only words which imply covenants for title. (6 Cruise Dig. s. p. 369; Shep. Touch. 160, 167; Wheat. Selw. 461; 8 Cow. 36, 40; Adams v. Gibney, 6 Bing. 656; 5 Bing., N. C., 185; 9 New Hamp. 219; 13 N. H. 513; 11 Mo. 442; 9 Ves. 330; 2 Caines, 194; 4 Wend. 502.) Even where there are implied covenants in a lease for years, the covenants cease with the estate of the lessor. (6 Bing. 656; 1 C. B. 431.) The plaintiff has no cause of action against the decedent's estate for the reason that there was no cause of action against him during his life. None but an express covenant could make the administrator liable, where the decedent was not and could not be liable during his life. (6 Bing. 656; 1 C. B. 402.) The plaintiff does not allege in his petition any covenant made by Wright nor any covenant broken by him. The plaintiff does not allege an eviction by the persons shown by the petition to have been entitled to the possession, the trustees. The possession taken by the curator was not accompanied by any legal right.

RICHARDSON, Judge, delivered the opinion of the court.

The words relied upon in this case as creating a covenant for quiet enjoyment are these: "The said Wright hereby *leases* unto said Difley," &c. It is almost an axiom in the law that the words "*demisi*," "*concessi*," or demise and grant, in a lease for years contain an implied covenant for quiet enjoyment and that the lessor had power to demise; but it is insisted that no other words have that technical operation. In many of the early cases, which discuss the force of particular words on this subject, the leases were in Latin, and, as the words "*demisi*" or "*concessi*" were always employed, it was only necessary to decide on the effect of these words; and as in England leases are drawn by professional conveyancers, who use established forms or follow stereotyped phrases that contain the words "grant" and "demise," their courts have

14—VOL. XXVIII.

not been called on to decide whether other equivalent words would not have the same force and imply the same covenants. Whilst therefore the adjudged cases assume or decide that the use of the word " demise" of itself implies a covenant, it can not be inferred that no other translation of " *demisi*" has the same operation. The case of Levering v. Levering, 13 N. H. 517, is the only case we have seen, which denies that such an effect can be implied from the words " *let and lease*," and the reasoning of the court is founded solely on the absence of these words in the older cases. But Rawle, in his learned treatise on covenants for title, properly observes that the only difference would seem to be that they used the Latin word " *demisi*," of which he thinks " lease" is a fair translation; and the law now seems to be that the implied covenants arise, not from particular or fixed terms, but from the words of leasing, or, as Furlong expresses it, " from the use of words of demise in a lease." (Furlong on Land. & Ten. 456; Maule v. Ashmead, 20 Pa. 482; Young v. Hargrave's Adm'r, 7 Ohio, (Pt. 2) 63; Black v. Gilmore, 9 Leigh, 448.) The lessor must have intended that the lease should be beneficial to the lessee, and the latter had the right to require of his landlord that the quiet enjoyment of it should be secured to him against eviction or disturbance by his act or the act of those who claim under or paramount to him. (Smith, Land. & Ten. 262, 268.) We think, then, that the lease in this case contained a covenant for quiet enjoyment implied by law, which ran with the land, and for the breach of which an action accrued to the assignee of the term.

The next question is whether the administrator of Wright is liable upon the implied covenant. It is said that as the lessor was only a tenant for life, the covenant was limited to the estate which he could lawfully grant, and that it ceased at his death because there was no longer an estate to support it. The two cases of Swan v. Scarles, Dyer, 257, and Adams v. Gibney, 6 Bing. 656, decide that if a person having only an estate for life makes a lease for years, which contains the covenants implied from the use of certain words, and,

after his death, but before the expiration of the term, the lessee is evicted by the remainder man, an action will not lie against the personal representative of the lessor, because "the covenant in law ends and determines with the estate and interest of the lessor." Conceding, however, to these cases the full weight of authority claimed for them, although they have been doubted, they do not govern or apply to the case under consideration, because it is clearly distinguishable from them. The principle on which they are founded seems to be that it will only be supposed that a party covenanted for what he could lawfully grant, and that the thing covenanted is within his power, or, as remarked in Bragg v. Wiseman, Brownl. 23, "that a covenant in law shall not be extended to make one do more than he can, which was to warrant it as long as he lived and no longer." But by the deed which vested in Wright an estate for life with the power of appointing by last will, the disposition of the property after his death was expressly conferred, so that he had the right and full power to make good the lease during the whole term, and to protect his lessee against any intrusion by the remainder man as effectually as if he had possessed an absolute estate in fee simple. The act necessary to secure the tenant in the full enjoyment of the leasehold for the full term of ten years was within his power, and as it was by his default that the lessee was injured, indemnity ought to be made by his personal representative. It is said by Judge Williams, in his notes to the case of Holder v. Taylor, Hobart, 47, that if in such case the lease had been made by a tenant in tail, his executor would be liable; upon the principle, we suppose, that the tenant in tail can effectually dock the entail by a common recovery, and in this respect the analogy is perfect.

It may often happen that the application of the rule in Swan v. Scarles will work no injury; for as the lessor is released from his covenants, the lessee will be discharged from the further payment of rent; but in this case the lessee was required not only to pay rent and all taxes and to keep the building insured, but to make lasting and valuable improve-

ments, which were to remain on the land to enhance the value of the estate, and under such circumstances it would be a fraud on him to terminate the lease without compensation, and to sacrifice the improvements he had made. The principles involved in this case are treated in the text and elaborate notes of Rawle on Covenants (p. 472, 480 ; and we have thought it only necessary to state our conclusions, without reviewing the authorities which have been industriously collected and ably discussed by the counsel representing the parties in the cause.

In our opinion the demurrer was improperly sustained, and the judgment therefore will be reversed and the cause remanded. Judge Napton concurs.

SCOTT, Judge, dissenting. I consider that the word " demise" or " grant" as alone being capable of raising an implied covenant on the part of a landlord in a lease. This I regard as the settled law, and do not feel myself at liberty to depart from it from any notions of justice or equity I may entertain in relation to the contrary opinion. It is the province of the courts to declare, not to make the law. It seems to me that a principle so well settled can not be overturned but by an act of the legislature. Many persons may have been advised and have drawn their leases in conformity to the law as it was understood to be, and now to change it would be to subject them to damages contrary to good faith and the understanding of the parties. The idea of making particular words, and them alone, imply a covenant, is not a novel one. Indeed it has long been found in our code. The words " grant, bargain and sell," by our statute create certain covenants. What would be thought of such a construction of the statute as would make any equivalent with raise the same covenants ? By a parity of reason, why why should they not do it ? When the common law among us is fixed and settled, courts have no more authority to disregard it than they have to disregard the statute law. If the common law declares that a particular word is necessary to

imply a covenant, courts can no more say that an equivalent word shall have such an effect than they can hold that a word equivalent in import to a statutory word, which is made to create a covenant, shall have the force of the statutory word. The reasoning of the case of Frost v. Raymond, 2 Caines, 188, is strong in corroboration of the views here presented. It was there held that the words " grant, bargain, sell, alien and confirm," in a conveyance in fee, do not imply a covenant; that it was implied by the word " *dedi*" or " give." Chan. Kent observed, " I am not able to assign a very solid reason for this distinction between the force and effect of the words ' give' and ' grant.' It arose from artificial reasons derived from the feudal law. The distinction has now become merely technical, but it is sufficient that it clearly exists and we are not certainly at liberty to confound the words or change their established operation. It is our duty to acquiesce in the law as we find it."

The reversal of this judgment will in my opinion involve the violation of another principle of law as well established as any that prevails. To it there is no qualification or exception to be found in the books so far as I have been able to find. The principle is this, that an implied covenant determines with the interest of the party out of whose estate it arises. Hence if a party take a lease for a certain term under an impression that the lessor is tenant in fee when in fact he is only tenant for life, the right of suing on that covenant will be defeated by the lessor's death, and the lessee left without remedy on eviction by the remainder man. Here the lessor or covenantor had an estate for life; he is dead, and, even if there was an implied covenant, as the estate to which the covenant was annexed is determined, no action can be maintained against the lessor's representatives. The authorities on this point all concur, and come down in an unbroken series from the earliest times to the present day. (Swan v. Stranham or Scarles, 3 Dyer, 257; Adams v. Gibney, 6 Bing. 156, 666.) I can not perceive how the principle can be affected by the fact that Christy, by a power of

appointment, with which he was clothed, might have converted his life estate into a fee simple. He was under no obligation by contract to exercise that power; and how can his failure to do an act which he was not bound to do affect his rights? In every case where the landlord fails to give a covenant for quiet enjoyment, he has it in his power to make good to the tenant any loss he may sustain by reason of his not having such a covenant. But will this ability affect his rights or change the nature of the liability he has incurred by reason of his contract? I am aware of no principle by which such a result can be produced.

I am in favor of affirming the judgment.