Boone v. Stover.

BOONE *et al.*, *Plaintiffs in Error*, v. STOVER *et al.*

1. **Mining License**: COVENANTS. An instrument in writing, under seal, granting permission to mine on a certain lot, so long as the grantees do regular mining work on the lot, is a license, and a grant of an incorporeal hereditament, which is not revocable except for breaches thereof by the grantee, and contains, in effect, a covenant, on the part of the grantor, that the grantee, in respect to his mining privilege, shall be free from the interruptions or claims of others.

2. ——: LEASE. Such an instrument is not a lease, for the reason that it does not pass such an estate in possession in the land, as would entitle the grantee to maintain ejectment.

3. **Misnomer of Instrument sued on**: VARIANCE. In an action for breach of covenant for quiet enjoyment contained in an instrument designated in the petition as a lease, but of whose contents the defendant is fully apprised, if the instrument, when produced on the trial appears to be not a lease but a mining license, an amendment of the petition may properly be made, but there is no such variance between the allegation and the proof as to authorize a non-suit.

*Error to Morgan Circuit Court.*—HON. GEORGE W. MILLER, Judge.

Action for damages for breach of an implied covenant for quiet enjoyment of a mining right granted by an instrument under seal. At the trial plaintiffs were forced to take a non-suit. Hence, this appeal.

*Spurlock & Richardson* for plaintiffs in error.

1. Implied covenants for peaceable and quiet enjoyment arose from the instrument or lease. There can be no doubt of this, where rent was paid and received, as in this case. 4 Cruise's Dig. title, lease, p. 51, marginal 68; *Mack v. Patchin*, 29 How. (N. Y.) 20; *Hamilton v. Wright's Admr.*, 28 Mo. 199; *Vernam v. Smith*, 1 Smith (N. Y.) 327; 2 Story on Contr., Sec 906. In this case the defendants had made a prior lease under which the plaintiffs were evicted, and that of itself was a breach of the implied covenant.

*J. L. Smith* for defendants in error.

1.   The mining permit, under which plaintiffs entered into possession of the premises, does not contain any covenant for quiet enjoyment, nor any words from which the law will imply such covenant.   The words " have permission," are neither a translation nor the equivalent of the words *demisi, concessi*, and unless this is so, no covenant will be implied.   There is none growing out of the simple relation of landlord and tenant.   *Meader v. Carondelet*, 26 Mo. 112.

2.   The instrument referred to is not a lease, it is a mining license.   1 Washburn Real Prop. 148; *Cook v. Stearns*, 11 Mass. 533; Bainbridge Mines & Min., pp. 129, 39, 237, 269, 321; *Chicago Oil Co. v. U. S. Pet. Co.*, 57 Penn. St. 83; *Norway v. Rowe*, 19 Vesey 158, 144; *Chetham v. Williamson*, 4 East 464; *Doe d. Hanley v. Wood*, 2 B. & Ald. 724; *Thomas v. Sorrel*, Vaughan 330.

NAPTON, J.—In this case we are under no necessity of referring to the distinction which is recognized, both in England and in this country, between parol licenses and licenses by deed, which in some cases is important.   The distinction is clearly, though somewhat quaintly explained by C. J. Vaughn, in *Thomas v. Sorrel*, (Vaugh. 351), " a dispensation or license properly passeth no interest, nor alters or transfers property in any thing, but only makes an action lawful, without which it had been unlawful, as a license to go beyond the seas, to hunt in a man's park, to come into his house, are only actions which, without license, had been unlawful.   But a license to hunt in a man's park and carry away the deer killed to his own use, to cut down a tree in a man's ground and to carry it away the next day after to his own use, are licenses as to the acts of hunting and cutting down the tree, but as to the carrying away of the deer killed and the tree cut down, they are grants.   So to license a man to eat my

*1. MINING LICENSE: covenants.*

meat, or to fire the wood in my chimney to warm him by, as to the actions of eating, firing my wood and warming him, they are licenses ; but it is consequent necessarily to those actions that my property may be destroyed in the meat eaten and in the wood burnt. So as, in some cases, by consequence and not directly, and as its effect, a dispensation or license may destroy and alter property."

A license, therefore, which gives some usufruct of the land itself, is an incorporeal hereditament, and can only be created and transferred by deed. Bainbridge on Mines 252. The deed produced in evidence in the present case, was a license and a grant of an incorporeal hereditament. This deed, had it contained formal provisos and covenants entered into by both parties, would have had the same effect as a lease, though not technically one. *Muskett v. Hill*, 7 Scott 855 ; 5 Bing. N. C. 694. It was not revocable, because it was not simply a license which might be by parol, but was accompanied with the grant of a beneficial privilege in lands. It contains covenants on the part of the grantees to deliver weekly all minerals raised on the lot to the Granby Mining and Smelting Company, or their agents, at the current market prices, and to perform not less than twenty days work every calendar month, unless prevented by sickness or unavoidable accident, and authorizes the Granby Mining and Smelting Company, by their agents, to inspect the work, whenever they desire, and empowers such agents, when they are of opinion that said work is not done in a workmanlike manner, or when any other agreement or covenant of the grantees is not complied with, to re-enter and take possession of the mine, without resorting to any court of law or equity. On the part of the grantors the deed gives permission to plaintiffs, the grantees, to mine on the lot described in it, " so long as they do regular mining work on said lot." Being under seal, and granting not merely a permission, but a beneficial privilege in the lot, it was not revocable except for breaches of the contract by the grantees. The grantors could not eject the grantees

while the latter were doing " regular mining work." Mr. Bainbridge in his work on Mines and Mining observes, that " it may be generally laid down, that if it appears to be the intention of a deed of grant or license, that the grantee should be solely and exclusively entitled to work for mineral, the grantor will be afterwards precluded from abridging or derogating from his grant by any attempt to exercise a right similar only in deed, but incompatible with his former disposition. This intention should properly appear in the granting part, for the use of the granting part is to give an accurate description of the thing granted. It is an essential part of the thing granted that it is freed from the interruptions and claims of others." (Ch. 8, Sec. 4, p. 255.)

Mr. Taylor, in his Treatise on Landlord and Tenant, also makes a similar observation. " A license may have the force of a grant of an incorporeal hereditament if it be valid and delivered; and if granted for a consideration, it may take effect as a covenant; as, if it authorizes the party to whom it is made to go upon the land of the party granting it, to use the land for his own profit; in which case it would be equivalent to a lease, or it may be limited to some particular purpose, as to cut wood, to draw water, &c., and in either case would be supported as a covenant, and effect would be given to it, in the same manner as any other contract." The thing granted in this case is the privilege of mining on a described lot so long as regular mining work is done by the grantees. It is essential to this, that this privilege be not interrupted by others. So that, in effect, there is in this grant a covenant that the thing granted shall not be interrupted, although the word covenant is not used. An agreement under seal "for the performance or non-performance of certain acts, or that a given state of things does or shall, or does not or shall not exist," is a covenant, and the covenant is an express one, for express covenants are those created by the express words of the parties to the deed (Platt Cov., 25), and the

formal word covenant is not indispensably requisite for the creation of an express covenant. 2 Mod. 268; 3 Keble 848; 13 N. H. 513; Bouvier, L. D., Title, Covenant.

2. ——: lease. These observations are based exclusively on the documents and other testimony submitted by the plaintiffs on the trial; but as the word "lease" and "leased premises" are occasionally used in the petition, and the question decisive of the case depends on whether there was a total failure of evidence to support the petition as it was drawn, it is proper to notice the characteristics which distinguish a lease from a license. A lease is defined in Cruises' Digest, (Ch. 5, Vol. 4,) as a contract for the possession and profits of land and tenements, on the one side, and a recompense of rent or other income, on the other. The words "demise, lease and to farm let," are the proper ones to constitute a lease, but any other words which show the intention of the parties that one shall divest himself of the possession, and the other come into it, for a certain time, whether they are in the form of a license, covenant or agreement, are of themselves sufficient; and will in construction of law, amount to a lease as effectually as if the most proper words had been used for that purpose. *Hamilton v. Wright's Admr.*, 28 Mo. 199. By a lease, the lessee obtains an estate in possession of the land and its products, in respect to which he can maintain ejectment; but, in a license or grant of an incorporeal hereditament the grantor does not divest himself of the possession, and the liberty of working a mine or mines on it is not inconsistent with the retention of possession by the grantor.

The case of *Doe d. Hanly v. Wood*, (2 B. & Ald. 736,) explains this distiction. That was an ejectment and brought on a mining license granted by deed, but the court of King's Bench held that an ejectment could not be maintained on it, though the license was, like the present, irrevocable. The Chief Justice, (Abbott,) observes in this case: "Instead of parting with or granting or demising

all the ores, metals and minerals, which were then exist-
ing within the land, its words import a grant of such parts
thereof as should, upon the license to search and get, be
found within the described limit, which is nothing more than
the grant of a license to search and get, (irrevocable in-
deed on account of its carrying an interest) with a grant
of such of the ore as should be found and got, the grantor
parting with no estate or interest in the land. If so, the
grantee had no estate or property in the land itself, or any
particular portion thereof, or in any part of the ore,
metals or minerals ungot therein; but he had a right of
property only as to such part thereof as upon the liberties
granted should be dug and got. That is no more than a
mere right to a personal chattel, when obtained in pursu-
ance of incorporeal privileges granted for the purpose of
obtaining it, being very different from a grant or demise
of the mines or metals or minerals within the land, and is
such a right only, as under the circumstances stated in
the case, is not sufficient to support an ejectment." It is
conceded at the same time by the Chief Justice that an
eviction by the grantor or any one under him, would be
wrongful, unless as authorized by the grant. The implied
covenants in a lease are, that no person claiming through
or under the lessor, or having a superior title to him, shall
disturb the lessee in the quiet enjoyment and use of the
premises leased, and a breach of this covenant occurs
when the ouster is by one holding a prior lease. *Andrews
v. Paradise*, 8 Mod. 318; *Salmon v. Bradshaw*, Cro. Jac.
304; *Ludwell v. Newman*, 3 T. R. 458; Rawle on Cov.,
Ch. 6.

The writing obligatory, then, produced on the trial,
was beyond doubt a license and not a lease, and the only
3. MISNOMER OF IN- remaining question to be determined is,
STRUMENT SUED
ON: variance.   whether the deed and the accompanying
proof on the trial was such a departure from the allegation
of the petition as properly to subject the plaintiffs to a
non-suit. The action in this case is for damages occasioned

by a breach of covenant in a deed executed by defendants, which is said in the petition to be a lease or writing obligatory. The paper is alleged to be in the possession of the partner of one of the defendants, and the court is asked to make an order for its production in court. The defendants, who executed the writing obligatory, were fully apprised of what it contained, and the miscalling it a lease was of no consequence, provided it contained such stipulations or covenants as the plaintiffs charged that it did. The gist and entire scope of the action was to recover damages for the breach of a covenant, express or implied, in a writing obligatory, under which plaintiffs had taken possession of a mine, and had expended labor in developing it. That the writing obligatory proved to be a license instead of a lease, might have suggested the propriety of an amendment; but, if the license contained the covenant sued on, the defendant was equally liable as though it had been a lease. Where one cause of action is stated in the petition, and another proved, we are aware that under our code and the decisions on its construction, the plaintiff is rightly non-suited. 17 Mo. 585; 19 Mo. 30. But the cause of action here proved is essentially the one stated; it is the breach of a covenant in a deed. The deed is sufficiently identified, and the only objection to the petition is that it gives the deed a wrong name. The covenant broken is in the deed produced.

Judgment reversed and case remanded. The other judges concur.

REVERSED.