C. W. ARBUTHNOT et al., Appellants, v. ECLIPSE LAND AND MINING COMPANY et al., Respondents.

**Kansas City Court of Appeals, January 8, 1906.**

1. **MINES AND MINING: Lease: License.** A written instrument under seal granting permission to mine on a certain lot as long as the grantees do regular mining work thereon, is a license, a grant of an incorporeal hereditament, and not a lease, since it does not pass such an estate in possession as would sustain ejectment.

2. ———: ———: ———: **Pleading: Statute.** *Held*, whether the transaction under judgment be a lease or a license creating a corporeal or incorporeal hereditament at common law, is immaterial, since under the statute it can remain in force only for three years, and the plaintiff's petition therefore states no cause of action.

3. ———: **Statute: Common Law.** The statute relating to mines and mining covers the multiplicity of questions that would arise in that business and defines the duties of owners, lessees and miners of land, and its legitimate effects cannot be frittered away under the pretense of conforming to common-law rules.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray*, Judge.

AFFIRMED.

*R. A. Mooneyham* and *H. W. Curry* for appellant.

(1) The contract pleaded, between W. B. Smith and Orlando Williams and Eclipse Land and Mining Company, by which Smith and Williams were granted the privilege of mining on the land of the Eclipse Land and Mining Company, and were to be paid by the Eclipse company, eight per cent of the gross value of ores mined, as consideration for their work, was a mere license— created no interest in the realty—and was therefore not obnoxious to the Statute of Frauds, requiring all contracts creating any interest in lands, to be in writing. Boon v. Stone, 66 Mo. 430; 29 Am. and Eng. Ency. of Law (2 Ed.), 883, title, "Creation of License;" Brown's Statute of Frauds (5 Ed.), sections 22 to 31, inclusive; Marrill v. Mackman, 24 Mich. 279; Wilson v. Fuller, 58 Minn. 147; Worthen v. Garne, 182 Mass. 243; Kastner v. Benz, 67 Kans. 486; Snyder v. Lumber Co., 97 N. W. 49; Railroad v. Olmstead, 84 App. Div. (N. Y.), 127; Turner v. Mobile, 135 Ala. 73. (2) Under the allegations of their petition, the plaintiffs entered upon the lands of the Eclipse Land and Mining Company and sunk a shaft and uncovered a valuable mine, and subsequently, relying on their license to mine the same for the full life of the Eclipse Land and Mining Company's lease, built a valuable concentrating plant thereon. They had, therefore, an executed parol license given for a valuable consideration, and upon the strength of which the licensee had expended money and labor. This was property which could not be taken from them without due process of law and for valuable consideration. The license had become irrevocable by equitable estoppel. Shepard v. Drake, 61 Mo. App. 184; Darlington v. Railroad, 99 Mo. App. 1; Kastner v. Benz, 67 Kans.; Moore

v. Newber, 21 Pa. 144; Dodge v. Johnson, 67 N. E. 560; Oster v. Broe, 64 N. E. 918; Maple Orchard v. Morsboll, 75 Pac. 369; Brantley v. Perry, 120 Ga. 760; s. c., 48 S. E. 332; Smith v. Railway, 5 Ohio C. C. (N. E.) 194; Thompson v. Coal Co., 135 Ala. 630; s. c., 34 So. 31.

*Thomas & Hackney* for respondents.

(1)   It appears from the allegations of the petition that when Smith and Williams entered on the mining lots in February, 1901, and first commenced the work of mining on the property, no rules of any kind had been posted by the Eclipse Land and Mining Company, who held the first lease on the premises.   Such being the case, Smith and Williams having entered with the consent of the Eclipse Land and Mining Company acquired the right to mine the lots in controversy for three years from the date of such consent.   R. S. 1899, sec. 8767; Robinson v. Troup Mining Co., 55 Mo. App. 662; Ashcraft v. Englewood Co., 106 Mo. App. 627; 2 Snyder on Mines, sec. 1230, p. 987.   (2)   The oral agreement alleged to have been made between the Eclipse company and Smith and Williams allowing them to hold the land for the unexpired term of the Eclipse company's lease, was molded by the section of the statute above cited into a right to occupy the property for the statutory period of three years and no longer from the date of giving such consent.   (3)   The Eclipse company had the right by posting mining rules, specifying the terms and conditions on which mining should be conducted on their land and also specifying the time during which the right to so occupy should continue, to bind itself and the miners to such conditions and to such time as the Eclipse company should designate in its rules.   R. S. 1899, sec. 8766.   (4)   The fact that Smith and Williams may have registered under the Eclipse company on May 21, 1901, after the company had posted mining rules and regulations, did not have the effect of extending their rights to mine

the lots for a greater period than three years from that date, notwithstanding the alleged oral agreement. R. S. 1899, sec. 8767; Robinson v. Troup Mining Co., supra; Ashcraft v. Englewood Mining Co., supra.

BROADDUS, P. J.—The court sustained a demurrer to plaintiffs' petition and they appealed. The petition is substantially as follows: In February, 1901, the defendant, the Eclipse Land and Mining Company, held a mining lease for the unexpired term of eight years on certain real estate in the county of Jasper, and without putting up mining rules and regulations as required by the statute, gave verbal permission to W. B. Smith and Orlando Williams to mine on a part of said premises; and it was also verbally agreed that they and their assigns should have the right to mine on the land during the term of said company's lease. Afterwards, on May 2, 1901, said company posted rules and regulations, which, however, did not specify the time during which the mining right should continue, but it was agreed verbally, at the time when said Smith and Williams signed the register of the rules, that their right to mine should continue during the unexpired term of said company's lease. Afterwards, Smith and Williams transferred certain of their interest to the firm of Lichliter & Company, by the terms of which the latter were to pay the Eclipse company a certain royalty and also to pay Smith and Williams a royalty. Under the arrangement, Smith and Williams and Lichliter & Company operated the mines and the latter paid royalty to the Eclipse company and to Smith and Williams until May 2, 1904, at which time the said Eclipse company and the Loyal Mining Company, which became interested in the lease, refused to recognize the right of Smith and Williams and Lichliter & Company to further mine on the land. It was further alleged that a copy of the lease from Smith and Williams to Lichliter & Company was delivered to the Eclipse company, which approved and retained the same

and acted on it until the said 2nd day of May, 1904. The plaintiffs' suit is to recover damages from the said last named date.

It is contended by plaintiffs that the contract between Smith and Williams and the Eclipse company was a mere license and created no interest in the realty; therefore, it was not obnoxious to the Statute of Frauds requiring all contracts creating any interest in land to be in writing. It was held in Boone v. Stover, 66 Mo. 430: "An instrument in writing, under seal, granting permission to mine on a certain lot, so long as the grantees do regular mining work on the lot, is a license, and a grant of an incorporeal hereditament." And "That such an instrument is not a lease, for the reason that it does not pass such an estate in possession in the land, as would entitle the grantee to maintain ejectment." And the law is similarly stated in 29 Am. and Eng. Ency. of Law, p. 883; Browne on Statute of Frauds, sections 21 to 32, inclusive; Morrill v. Mackham, 24 Mich. 279; Worther v. Garnes, 182 Mass. 243. But it seems to us that the character of the verbal contract in controversy, its force and effect, whether it be a lease or a license, or whether it creates a corporeal or an incorporeal hereditament at common law, is immaterial, because sections 8766-8767, Revised Statutes 1899, provide that it shall remain in force for a term of only three years. In a recent decision of this court, it is held: "Where a lessee of mining land plats it and posts rules omitting to name the time for the continuance of miner's rights to operate as required by the statute, then the license continues for a period of three years and no longer. [Ashcraft v. Englewood Mining Co., 106 Mo. App. 627.] And such is the holding in Robinson v. The Troup Mining Co., 55 Mo. App. 662. And the said Smith and Williams could convey no greater estate than they held themselves to Lichliter & Company.

The statute in question settles every disputed question raised by plaintiffs on their appeal. The Legisla-

ture evidently had in mind the multiplicity of questions that would inevitably arise in the business of mining without some definite rules regulating the matter; and for the purpose of defining the duties of owners, lessees and miners of land, it enacted the mining statute. And as the statute in question is clear and positive in its terms, there can be no good reason assigned why its legitimate effect should be frittered away under the pretense of conforming to common-law rules. As plaintiffs' right to mine on the land had expired by reason of the statute in question, the action of the court in sustaining the demurrer is affirmed. All concur.