G. M. MINING COMPANY, Appellant, v. JAMES HODGE, VIRGIL HODGE, AL WEBB and BAILEY WEBB, Respondents.

Springfield Court of Appeals, November 14, 1914.

1. **MINES AND MINING: Ejectment: Defense: Evidence Examined.** Ejectment. Defended on the ground that the entry upon the land was with plaintiff's knowledge, permission and consent, rights as licensees thereby being acquired. Evidence in support thereof examined and reviewed and considered sufficient to sustain a verdict for defendants.

2. **COURTS: Jurisdiction: Ejectment: Mining License.** Action in ejectment. Defendants admitted plaintiff's title but claimed right to possession under mining license within purview of Secs. 8408, 8409, R. S. 1909. The Court of Appeals has jurisdiction of the appeal.

3. **MINES AND MINING: Mining License: Nature of.** A statutory mining license has nothing to do with the title to real estate. It confers no interest in the soil, nor estate or interest in the ungotten minerals.

4. ———: ———: **Rights Under Statute.** Where, after abandonment of a mining lease, lessor encouraged persons who had entered with lessee's consent, to continue their work, such persons acquired a right to continue mining for a term of three years. (Citing Sec. 8409, R. S. 1909.)

5. MINES AND MINING: Lease: Surrender: What Establishes.
Any act amounting to an agreement on the part of the tenant
to abandon and on the part of the landlord to resume possession
of the premises demised, amounts to a surrender by operation
of law.

Appeal from Jasper County Circuit Court, Division
Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1) Jurisdiction of an appeal from a judgment in
ejectment is in the Supreme Court and not in the
Court of Appeals. Bell v. Winkleman, 73 Mo. App.
451; Mitchell v. Blatt, 76 Mo. App. 408; Peters v.
Worth, 164 Mo. 92; Baker v. Squire, 143 Mo. 92; State
ex rel. v. Muench, 225 Mo. 226, following and affirming
the 143 Mo. and 164 Mo. supra. (2) The interest and
title asserted by defendants in the case at bar is an
interest in real estate, as it is the right to dig and
remove and sell and dispose of the realty itself (zinc
and lead ores) for a period of three years that defend-
ants claim. "A license to work mines . . . confers
not only the right to enter and occupy, but to commit
waste and carry away part of the realty itself, and is,
therefore, necessarily an interest in lands, tenements
and hereditaments." Desloge v. Pearce, 38 Mo. 599.
(3) To entitle a miner to a statutory mining right
under section 8409, R. S. 1909, three things must con-
cur: 1. Permission and consent of the owner for the
miner to enter and mine. 2. Actual physical entry;
i. e., being let into the actual possession under and by
virtue of this consent. 3. The opening up of a mine
after such entry and consent in the good faith, reliance
upon, and solely in consequence of such consent and
entry. Lacking any one of these elements no statutory
mining right accrues. The court, therefore, erred in

refusing plaintiff's peremptory instruction and erred in giving the instruction authorizing a verdict for the defendants. In re Nagle, 12 N. Y. Supp. 707; Brunson v. State, 140 Ala. 201, 37 So. 197; Spalding v. Conzelman, 30 Mo. 177; Emmel v. Hayes, 102 Mo. 194. (4) In order to invoke the mining statute, there must be an element of estoppel as against the owner in favor of the miner. Robinson v. Troupe Min. Co., 55 Mo. App. 662. (5) The defendants having entered under Ramage, their continuance in possession even with plaintiff's consent, did not bring them under the mining statute. It is settled law that where one in possession of land verbally contracts with the owner for the land, or a new lease thereon, his merely continuing in possession after the making of the alleged contract, is not an act of performance within the meaning of the rule so as to justify a decree in his favor according to the contract. Spaulding v. Conzelman, 30 Mo. 177; Emmel v. Hayes, 102 Mo. 194; Browne on Stat. of Frauds (3 Ed.), sec. 477; Roberts v. Templeton (Ore.), L. R. A. (N. S.) 790, and note. (6) Even as against Ramage the defendants could not acquire a three-year statutory mining right upon the lot for the reason that the lease to Ramage was never recorded in the recorder's office of Jasper county, and he therefore never came within the category of lessees named in sections 8408 and 8409.

*J. D. Harris* for respondents.

(1) The title to the land is not in dispute. Defendants merely claim a miner's license under the statute. Under such license they do not even have title to the ore in place. Boone v. Stover, 66 Mo. 434; Foundry & Machine Co. v. Cole, 130 Mo. 6; Hough v. Light & Fuel Co., 127 Mo. App. 570; Arnold v. Bennett, 92 Mo. App. 159. (2) Where in ejectment the title is not in question and simply the right of possession

under an easement is in issue, the title is not affected so as to divest the Court of Appeals of jurisdiction over an appeal. Hough v. Light & Fuel Co., 127 Mo. App. 570, and cases cited therein. (3) Defendants merely held a miner's license to enter and dig for ore. Sec. 8409, R. S. 1909; Lytle v. James, 98 Mo. App. 340; Foundry & Mach. Co. v. Cole, 130 Mo. 1; Rochester v. Gate City Mining Co., 86 Mo. App. 447; Arnold v. Bennett, 92 Mo. App. 156. (4) Ejectment is a possessory action; the plaintiff to maintain it must have the right of possession, but be out of it. For it to lie against the defendant, the defendant must be in possession adversely to the plaintiff at the time suit is brought. And since one granting a miner's license, retains the possession and the licensee thereunder does not acquire the possession, ejectment will not lie in favor of the owner of the land, who grants a miner's license to enter and dig for ores thereon, against his licensee. It follows from this that the judgment of the circuit court should be affirmed. Boone v. Stover, 66 Mo. 434; Foundry & Machine Co. v. Cole, 130 Mo. 6; Rochester v. Gate City Mining Co., 86 Mo. App. 447; Zinc Co. v. Amsden, Leonard & Co., 125 Mo. App. 515; Arbuthust v. Land & Mining Co., 115 Mo. App. 600.

FARRINGTON, J.—Ejectment. Plaintiff sought to recover the possession of land in Jasper county, together with damages and the alleged value of monthly rents and profits. Defendants for answer admitted plaintiff's title to the land, but denied its right to possession on the ground that they had theretofore entered upon said land with the knowledge, permission and consent of the plaintiff to dig for ores and in good faith dug and opened shafts and extended and operated shifts therefrom and assembled machinery for carrying on mining operations, and thus acquired rights under section 8409, Revised Statutes 1909; that they

make no claim to the premises except as licensees; and that under the statute they are entitled to mine this ground and extract ores for the term of three years. Verdict and judgment to the effect that defendants are entitled to the possession of the premises. Plaintiff appealed.

The evidence shows that the G. M. Mining Company, the plaintiff and appellant herein, was the owner in fee of the land described in the petition, including lot 36 mentioned in the answer, at all times mentioned in the record; that on June 12, 1912, the G. M. Mining Company executed a mining lease to S. Y. Ramage for a term of ten years from that date on said land; that Ramage entered into possession of the land under the lease about that time and platted the ground into mining lots for miners to enter thereon and mine, but posted no rules governing such mining. Ramage continued mining operations on a portion of the land, through his superintendent, W. B. Shackleford, and in this connection pumped water from the ground and operated a mill thereon. About the sixth or seventh day of July, 1913, while Ramage was still operating under his lease, the defendants entered upon lot 36 of the Ramage plat thereof, with the permission and consent of Shackleford, superintendent for Ramage, and engaged in mining on said lot under the terms of section 8409, Revised Statutes of Missouri 1909.

Mrs. Henrietta Glenn was at all times mentioned in the record the president and general manager of the plaintiff, G. M. Mining Company, and seemed to have entire charge and control of its affairs.

Some few days prior to August 18, 1913, W. B. Shackleford, for and on behalf of S. Y. Ramage, notified Mrs. Glenn when she was on the leased premises that Mr. Ramage was going to abandon the lease and surrender back the premises. The president of the plaintiff company made no objection to this, and in pursuance of this determination, the Ramage people

stopped operations, and on August 18, 1913, pulled their pumps, abandoned the premises and surrendered the same to the G. M. Mining Company. On August 28, 1913, the G. M. Mining Company wrote to Mr. Shackleford asking that the lease be surrendered. On September 17, 1913, Shackleford sent the lease in a letter to Mrs. Glenn, explaining that Mr. Ramage (who resided in the East) had delayed forwarding it. Plaintiff gave a notice forfeiting the Ramage lease and a copy of this notice was posted on lot 36 about September 12, 1913. On the said day the defendants tendered the plaintiff ten per cent royalty on an ore sale made that day, which tender was refused. This was the first sale of ore made by the defendants. On September 18, 1913, the day plaintiff received the surrendered lease, written notice was given defendants to surrender to plaintiff the possession of lot 36. This ejectment suit was commenced on September 23, 1913. The defendants continued mining after this, and on October 2, 1913, plaintiff gave defendants notice of an application for an injunction to be heard on October 9, 1913. The injunction was granted on the last mentioned date. The defendants contended at the trial that between the date of the pulling of the pumps by Ramage (August 18th or 19th) and the surrender of the lease (September 17th), Mrs. Glenn, president of the plaintiff company gave her consent to defendants to mine lot 36. There is ample evidence offered by the defendants to the effect that Mrs. Glenn was at this place where the defendants were working three or four times a week after August 16 or 17, 1913, one witness testifying that she was there almost every day in August; that defendants were taking ore out of this drift at the times Mrs. Glenn was there. J. A. Webb testified that he went to work on lot 36th about the 16th or 17th of August, 1913, and that she was there something like a week or two after that when they had about twelve or fifteen wagon loads of ore-bearing dirt on

top the ground; that at that time she expressed satis-
faction with the way they were mining and compli-
mented them on the ore lying out there, and said: "I
have decided you men are the kind of men I want to
mine this shaft. You follow the ore and keep after
the streaks and you can work smaller streaks than
large companies can and if you find one nugget you
save it and lay it up and take care of it. Why shouldn't
you, it belongs to you." A witness named Clubb who
happened to be at defendants' diggings along the lat-
ter part of August and after Ramage had pulled his
pumps testified that he saw Mrs. Glenn there; that
she "spoke about what good diggings they had and
that something was said about the chunks laying there
and she spoke about the chunks laying that way was
liable to be carried off and they ought to have a box
or something to lock them in. There was a box setting
across the road and the boys asked her about taking
that box and she said they could have the box to put
the chunk ore in but wanted them to remember that
it belonged to Mrs. Glenn. She said something about
building a mill but I don't remember what. She said
they was the kind of miners she wanted to mine her
ground because she believed they saved most all the
ore. . . . They had been at work before she came
and were on top because they had shot and there was
smoke in the ground." Will Bena, who lived on the
Glenn place, went with Mrs. Glenn to lot 36 and heard
her say she was going to put up a mill and run the ore
over the mill. Mrs. Glenn testified for the plaintiff
that she knew the defendants were driving shifts and
sinking shafts and putting in timbers at great expense
and labor, but her theory seemed to be that she could
do nothing until she received back the surrendered
lease. Defendants testified that they never asked her
for a lease on lot 36 and never talked with her as to
how long they would have a right to mine the lot and
never asked about what royalty they should pay.

There was evidence that defendants were to pay Ramage twenty-five per cent, of which fifteen per cent was to be for pump and water rent, and that ten per cent is the customary royalty where no water is furnished. Also, that after the conversation with Mrs. Glenn the defendants drove their drifts further and sunk the shaft deeper and produced a large additional amount of ore. Defendant James Hodge testified that when he offered the check for royalty to Mrs. Glenn "she asked me why I didn't come to her. She asked me first who I went to about making this turn in. I told her Mr. Shackleford and she wanted to know why I didn't come to her. I told her I didn't know her, Shackleford was the man I leased from and I thought he was the man to go to. She wouldn't take the money on this check. . . ." On cross-examination: "When I offered her the check she said she wouldn't receive it and told me to go to Shackelford to do this business, 'she didn't want nothing to do with our gang,' or something of that kind."

The appellant's principal contention is that defendants never *entered* lot 36 under it, but that the entry was made under Ramage from whom defendants verbally leased the lot; that their shaft was sunk, the drift run into ore, and the mine opened up under Ramage; that the most they claim is that they continued to mine the lot for a few days after the forfeiture and surrender of the Ramage lease with the consent of the plaintiff; and that this does not entitle the defendants to a statutory mining right of three years.

The briefs filed give prominence to the question of our jurisdiction to hear and determine this appeal, the point being raised in appellant's motion to transfer the case to the Supreme Court on the ground that the title to real estate is involved. Defendants in their answer disclaimed title to the lot in question, and at no place in the record is there any intimation that

185MoApp10

they deny the plaintiff's title. Appellant cites cases holding generally that the courts of appeal have no jurisdiction of appeals in actions of ejectment. Appellant's contention on this question is sufficiently answered in the case of Hough v. Light & Fuel Co., 127 Mo. App. l. c. 574, 575, 106 S. W. 547. It is true, that was not a mining case. But it is clear under the decisions that the statutory mining license has nothing whatsoever to do with the title to real estate. It does not confer any interest in the soil containing the minerals and does not confer any estate or interest in the ungotten minerals. [Arnold v. Bennett, 92 Mo. App. l. c. 159; see, also, Joplin Supply Co. v. West, 149 Mo. App. l. c. 95, 130 S. W. 156.]

Section 8409, Revised Statutes 1909, insofar as it is material here, provides: "Whenever any such owner or lessee of real estate shall permit any person or persons, . . . to enter and dig for lead ore or other minerals on such real estate, with his consent, but without such owner or lessee complying with the provisions of section 8408, and such person or persons having so entered upon said lands by the permission and consent of such owner or lessee as aforesaid, and having in good faith dug or opened any shaft, mine, quarry, prospect or deposit of mineral, or extended or opened from any shaft or mine any room, drift, entry or other excavation, he or they shall have the exclusive right as against such owner or lessee, . . . to continue the work, mine and dig such shaft, mine, prospect or deposit of mineral so dug or opened by him or them as aforesaid, in said real estate, with a right of way over such lands for the purpose of such mining, for the term of three years from the date of the giving of such consent or permit. . . ."

There was sufficient evidence to support the verdict as to the permission and consent of the plaintiff for defendants to work the ground.

The evidence shows that the Ramage lease was abandoned on August 18, 1913, and that the surrender was accepted by the plaintiff. Any act amounting to an agreement on the part of the tenant to abandon and on the part of the landlord to resume possession of demised premises amounts to a surrender by operation of law. [Mullaney v. McReynolds, 170 Mo. App. 406, 155 S. W. 485.] From that time on the plaintiff was in possession and any entry by defendants thereafter was a trespass. Instead of treating them as trespassers, Mrs. Glenn (who is practically the plaintiff company) visited their diggings almost daily and did everything she could have done to encourage the defendants to go on with their work except to give them a lease. She testified: ''Between the time the Ramage people pulled the pumps and the 12th of September I knew these people were operating there and mining. . . . I knew they were driving drifts and sinking shafts and putting in timbers at great expense and labor.'' A careful reading of the statute reveals that in order to acquire mining rights thereunder it is not necessary for a man to dig from the grass roots down, but he may acquire the rights if he ''extended or opened from any shaft or mine any room, drift, entry or other excavation,'' and this was done by the defendants according to the plaintiff's own evidence after the plaintiff was in full possession of the premises, and it was done with the permission and consent and encouragement of the plaintiff. We think the requirements of the statute were met by the defendants in this case.

Respondents in their brief contend that plaintiff cannot maintain ejectment against them as licensees, but as we have disposed of the case on another point it will not be necessary to discuss that question.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.