# MARCH, 1934.

JACK WOODRUFF (EMPLOYEE), APPELLANT, v. SUPERIOR MINERAL COMPANY (EMPLOYER) AND CONSTITUTION INDEMNITY COMPANY (INSURER), RESPONDENTS.—70 S. W. (2d) 1104.

St. Louis Court of Appeals. Opinion filed May 8, 1934.

*Henry C. Stoll* for appellant.

*A. A. Alexander* and *L. A. Robertson* for respondents.

BECKER, J.—This is an appeal from the judgment of the Circuit Court of Washington County, Missouri, reversing an award of the Missouri Workmen's Compensation Commission in favor of plaintiff employee.

The defendant, Superior Mineral Company, a corporation, is engaged in the business of mining barytes upon what is known as the DeLore property in Washington County, Missouri, the said company operating under a lease subject to royalty made by DeLore to one William C. Wolf, which lease was assigned to said company.

According to the findings of fact of the commission Woodruff, the plaintiff, was an independent contractor of the Superior Mineral Company engaged in hand mining of tiff on the leased premises of the Superior Mineral Company, who, under section 3308 (a), Revised Statutes of Missouri, 1929, Mo. Stat. Ann., sec. 3308 (a), page 8242, was an employee of said company, citing as their authority Meyer v. Adams (Mo. App.), 50 S. W. (2d) 744; Pruitt v. Harker (Mo. Sup.), 43 S. W. (2d) 769; Simpson v. New Madrid Stave Co. (Mo. App.), 52 S. W. (2d) 615. The commission found that the plaintiff had lost the sight of his right eye and some vision of his left eye, and awarded him compensation at the rate of $6 per week for life.

The employee here on appeal urges that the circuit court erred in reversing the award of the commission because said award was based upon findings of fact adequately supported by the record. The defendants in turn insist that the facts in the case bring it within the laws of Missouri concerning "Mines and Mining" chapter 107, Revised Statutes of Missouri, sections 13593, 4, 5, Mo. Stat. Ann., sections 13593, 4, 5, pages 5126, 27, 28, 29, 30, and that under said statutes the relation between the defendant and plaintiff as to the occupancy of the land and the right to mine thereon was that of licensor and licensee, and as to the right, interest and property in the ore or mineral dug in the mine on the land, the relation was that of buyer and seller of a commodity and that there was no testimony to support a finding that the plaintiff was an employee of the defendant.

Upon the record before us, in light of the statutes supra, we have come to the conclusion that the plaintiff was an independent contractor. Section 13593 of our statutes, among other things, provides that when any person owning real estate or having a leasehold interest in such real estate for mining purposes by lease from any owner thereof shall permit any one to enter and dig thereon for any mineral, he shall keep a printed statement of the terms, covenants and agreements upon which such land may be mined, posted or hung up in a conspicuous place in the principal office or place of business of such person in the county in which said lands are situated, and any persons mining on said lands after the posting of such a statement shall be deemed to have agreed to and accepted the terms thereof and shall, together with the owner of the lease, be bound thereby.

Section 13594 provides that whenever any such owner or lessee of real estate does not comply with the provisions of said section 13593 and shall permit any person to enter and dig for mineral on such real estate, any such person shall have the exclusive right as against such owner or lessee giving such permit or consent, to continue to work, mine and dig such shaft, mine, prospect or deposit of mineral dug or opened by him in said real estate, with a right of way over such lands for the purpose of such mining for the term of three years from the date of the giving of such consent or permit, provided that such person shall pay to the owner or lessee of the said lands the royalty for mining thereon in the manner provided in the section. It further provides that the owner or lesseee *shall have a lien on all mineral taken or dug therefrom for the royalty due thereon until the same is paid.*

Section 13595 provides that *any such person* who, by the permission of the owner or lessee of any real estate, has the right to mine thereon, and having entered and dug or mined thereon any mineral, *shall have the right to the exclusive possession of such ore or mineral* excepting the royalty thereon which shall be paid as hereinbefore provided *until he shall be paid or tendered by such owner* or lessee of such real estate *the then highest market price in cash paid by such owner or lessee for the same kind of ore or mineral dug or mined on said lands,* and if no such minerals are being at the time mined on such land and sold to such owner or lessee, then the highest price paid for such ore or mineral dug on lands nearest thereto shall be paid or tendered by such owner or lessee in such case, and *upon such payment or tender, the absolute right to the possession of such lead,* ore or other mineral so dug out and mined under the provisions of section 13594, and for which such payment or tender shall have been made, *shall vest in such owner or lessee.*

Section 13596 provides that if any person having thus mined any mineral, having offered to deliver such mineral according to contract or paid or tendered the royalty, if any, due thereon, to such owner or lessee of the said real estate, shall serve a notice in writing upon the owner or lessee stating therein the amount of ore or other mineral he has ready for delivery, and requiring such owner or lessee to receive and pay for the same, the said owner or lessee shall, within five days after the service of such notice, *receive and pay for* such ore or other mineral which the said person digging or mining the same may deliver to him, not exceeding the amount named in the notice; and in such case if the owner or lessee fails or refuses within the five days stated to pay for such ore or mineral delivered or offered to be delivered to him, then in that event the person who dug and mined the same shall thereupon *acquire an absolute title to such ore* or mineral and may thereupon dispose of the same to any person or in any manner he may choose.

The record discloses that in the summer of 1930 Woodruff left the city of St. Louis and moved to Washington county where he joined his cousin, Jim Greenley, who was mining tiff upon the land under lease to the defendant company. Woodruff assisted Greenley in his work and the tiff which they mined was delivered to the defendant company, the money received therefor being divided between them. In the fall of 1930, Woodruff moved into a small house belonging to the defendant, where he was permitted to live without paying rent, and with the permission and consent of the defendant he entered upon the leased land and dug tiff and other mineral thereon until the day of his injury in January, 1932. The tiff which Woodruff mined was hauled to the mill of the defendant who retained the royalty and deducted the cost of the hauling and paid over the balance remaining to the claimant miner. It is conceded that no orders were given to Woodruff as to where or how or how much tiff he should mine, or when to start or when to quit, and that Woodruff worked as long or as little as he chose, and that he himself furnished the necessary tools and equipment needed for the work.

Upon the record before us it is apparent that the defendant failed to post a printed statement of the terms, etc., as required by section 13593, and therefore plaintiff's right to mine upon the property leased by defendant became fixed under the terms of section 13594, that is, the rights of plaintiff and defendant company are to be viewed as though there had been a written contract or agreement between the parties conforming to the terms of said section. Plaintiff, therefore, had a license to continue with his mining for a period of three years subject to defendant's "lien on all minerals taken or dug therefrom for the royalty due thereon until the same is paid." And by section 13595 plaintiff had "the right to the exclusive possession of such ore or mineral, except the royalty thereon . . . until he shall be paid . . . the then highest market price in cash," paid by the defendant for like mineral mined upon defendant's premises, and only upon such payment or tender of payment shall the absolute right of possession of such ore or mineral vest in the defendant, and under section 13596, should the defendant (after due notice in writing provided therein, stating that the plaintiff has ore or mineral on hand ready for delivery and requiring defendant to receive and pay for the same), fail to pay plaintiff within five days for such ore or mineral "then in that event" plaintiff thereupon acquires "an absolute title to such lead ore or mineral and may thereupon dispose of the same to any person or in any manner he may choose." [Boone v. Stover, 66 Mo. 430; Arbuthnot v. Land & Min. Co., 115 Mo. App. 600, 72 S. W. 32; Robinson v. Troup Min. Co., 55 Mo. App. 662; Ashcraft v. Min. Co., 106 Mo. App. 627, 81 S. W. 469; G. M. Mining Co. v. Hodge et al., 185 Mo. App. 138, l. c. 146, 170 S. W. 689.]

Our mining statutes therefore furnish the basis of a contract between the defendant mineral company and the claimant herein under which plaintiff, as a licensee, mined tiff upon the defendant's property. The mining of the ore under the facts in the case seems to us to be a service rendered by the miner to the defendant mining company, the mining of the ore being work done according to the miner's own methods and without being subjected to the control of the mining company excepting as to the result of his work. The miner, therefore, was exercising an independent employment under statutory regulations, exercising his skill and judgment as a miner in the prosecution of his work, the execution of which was left entirely to his discretion, without any restriction as to its exercise or limitation, either as to the manner in which or as to the time in which the work had to be done. We find, therefore, abundant substantial testimony to support the findings of fact of the Workmen's Compensation Commission that the claimant rendered his services to the defendant in the course of an independent occupation representing the will of the mining company only as to the result of his work and not as to the manner in which it was accomplished, and that the claimant in the instant case was an independent contractor.

There is abundant authority holding that the commission's finding that the claimant is an independent contractor is in the nature of a special verdict and conclusive, if supported by any substantial competent evidence. [Sec. 3342, R. S. Mo. 1929, Mo. Stat. Ann., sec. 3324, p. 8275; Jones v. Century Coal Co. (Mo. App.), 46 S. W. (2d) 196; Probst v. Basket & Box Co. (Mo. App.), 52 S. W. (2d) 501; Caldwell v. Kreis & Sons (Mo. App.), 50 S. W. (2d) 725; Goebel v. Mo. Candy Co. (Mo. App.), 50 S. W. (2d) 741; Meyer v. Adams et al. (Mo. App.), 50 S. W. (2d) 744; Clayton v. Brick Co. (Mo. App.), 27 S. W. (2d) 52; Carman v. Dairies Co. (Mo. App.), 58 S. W. (2d) 781.]

It must be taken as conceded upon the record that the work which the claimant was engaged in was that of mining upon the property of the defendant, and that mining was the usual business carried on by the defendant company, and that the claimant met with injury in the course of his mining upon the premises of the defendant. In this situation, holding as we do that the claimant is an independent contractor then under section 3308 (a), Revised Statutes of Missouri, 1929, Mo. Stat. Ann., section 3308 (a), page 8242, which provides among other things that "any person who has work done under contract on or about his premises which is an operation of the usual business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractor, and other employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business," claimant falls within the purview of the Workmen's Com-

pensation Act, and the award of the commission, upon the record, was correct, and the circuit court erred in reversing said award on appeal. [Pruitt v. Harker, supra; Meyer v. Adams, supra; Simpson v. New Madrid Stave Co., supra.]

· For the reasons above stated the judgment of the circuit court is reversed and the cause remanded with directions to set aside its judgment heretofore entered herein and enter a judgment affirming the commission's award.

*McCullen, J.*, concurs; *Hostetter, P. J.*, not sitting.